283 P.3d 695

John M. CORBOY and Stephen Garo Aghjayan, Plaintiffs–Appellants

v.

David M. LOUIE,[1] in his official capacity as Acting Attorney General, State of Hawai'i; the County of Maui, and the County of Kauai, Defendants–Appellees.

Garry P. Smith and Earl F. Arakaki, Plaintiffs–Appellants

v.

David M. Louie, in his official capacity as Acting Attorney General, State of Hawai'i; and the City and County of Honolulu, Defendants–Appellees.

J. William Sanborn, Plaintiff–Appellant

v.

David M. Louie, in his official capacity as Acting Attorney General, State of Hawai'i; and the County of Hawai'i, Defendants–Appellees.

In the Matter of the Tax Appeal of Stephen Garo Aghjayan, Appellant–Appellant

and

State of Hawai'i, Intervenor–Appellee.

In the Matter of the Tax Appeal of John M. Corboy, Appellant–Appellant

and

State of Hawai'i, Intervenor–Appellee.

In the Matter of the Tax Appeal of Garry P. Smith, Appellant–Appellant

and

State of Hawai'i, Intervenor–Appellee.

In the Matter of the Tax Appeal of William J. Sanborn, Appellant–Appellant

and

State of Hawai'i, Intervenor–Appellee.

In the Matter of the Tax Appeal of Earl F. Arakaki, Appellant–Appellant

and

State of Hawai'i, Intervenor–Appellee.

No. 30049.

Supreme Court of Hawai'i.

April 27, 2011.

Reconsideration Denied May 18, 2011.

---

1. During the pendency of this action, David M. Louie (Louie) succeeded Mark J. Bennett as Attorney General. Thus, pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1) (2010), Louie has been substituted automatically for Bennett in this case.

**90**

H. William Burgess for plaintiffs-appellants.

Girard D. Lau, Deputy Attorney General, for defendants/appellees.

RECKTENWALD, C.J., NAKAYAMA, and DUFFY, JJ., and Circuit Judge NISHIMURA, Assigned in Place of MOON, C.J., Recused and Retired, with ACOBA, J., concurring separately.

**2.** Plaintiff-appellants John M. Corboy, Stephen Garo Aghjayan, Gary P. Smith, Earl F. Arakaki, and J. William Sanborn are hereinafter referred to collectively as "Taxpayers." Defendants-appellees David M. Louie, in his official capacity as

Opinion of the Court by
RECKTENWALD, C.J.

Plaintiffs-appellants are real property owners and taxpayers who brought claims in the Tax Appeal Court against various state and county defendants-appellants, seeking an exemption from real property taxes equal to the exemption granted to Hawaiian homestead lessees under the Hawaiian Homes Commission Act (HHCA) and their respective county codes.[2]

Taxpayers, who are not native Hawaiian, argued that the tax exemptions for homestead lessees involve discrimination on the basis of race in violation of the Fifth and Fourteenth Amendments to the United States Constitution and federal civil rights laws because only native Hawaiians are eligible to become homestead lessees under the HHCA. They accordingly sought a refund of real property taxes paid in excess of what they would have been assessed had each of them been granted a tax exemption; a declaration that the HHCA, § 4 of the Admission Act, and article XII, sections 1–3 of the Hawai'i Constitution are invalid; and an injunction barring implementation of any real property tax exemption given exclusively to Hawaiian homestead lessees.

The State filed a motion for summary judgment on the ground that the disputed tax exemptions did not violate the equal protection clause because they did not involve a suspect classification. Specifically, the State argued that "the tax exemptions are *not* based upon whether a taxpayer is native Hawaiian or not, but rather whether the taxpayer is a *homestead lessee of HHCA land.*" (Emphasis in original). The State further argued that Taxpayers lacked standing to challenge the tax exemption on the ground that only native Hawaiians are eligible to become homestead lessees because Taxpayers had not established that they were interested in participating in the homestead lease program. The tax appeal court granted the State's motion for summary judgment on the ground that the tax exemp-

Acting Attorney General, State of Hawai'i; the County of Maui; the County of Kaua'i; the City and County of Honolulu; the County of Hawai'i; and the State of Hawai'i are hereinafter referred to collectively as "State."

tion did not involve a suspect classification.[3] On appeal, Taxpayers challenge the tax appeal court's judgment in favor of the State.

We hold that Taxpayers lack standing to pursue their challenges to the constitutionality of the tax exemption and the HHCA, generally.[4] As set forth below, the record does not establish that Taxpayers are interested in participating in the homestead lease program, and Taxpayers have accordingly not established an injury-in-fact sufficient to confer standing and to warrant the exercise of the tax appeal court's jurisdiction in this case. We therefore vacate the tax appeal court's judgment and remand with instructions to dismiss Taxpayers' complaints for lack of jurisdiction. *Cf. Office of Hawaiian Affairs v. Hous. & Cmty. Dev. Corp. of Hawai'i*, 121 Hawai'i 324, 339, 219 P.3d 1111, 1126 (2009) (vacating and remanding for an entry of judgment dismissing claims, where the plaintiff's claims were not ripe for adjudication).

## I. BACKGROUND

### A. Historical Background

Taxpayers raise numerous challenges to State action with regard to the ceded lands and the Hawaiian home lands. To analyze the claims set forth in this appeal, it is necessary to present the historical context in which this case arises.

#### 1. Ceded Lands

"[F]rom 1826 to 1893, the United States recognized the independence of the Kingdom of Hawaii, extended full and complete diplomatic recognition to the Hawaiian Government, and entered into treaties and conventions with the Hawaiian monarchs to govern commerce and navigation[.]" Apology Resolution, Pub.L. No. 103–150, 107 Stat. 1510, 1510 (1993) (hereinafter Apology Resolution). In 1893, "the United States Minister assigned to the sovereign and independent Kingdom of Hawaii conspired with a small group of non-Hawaiian residents of the Kingdom of Hawaii, including citizens of the United States, to overthrow the indigenous and lawful Government of Hawaii[.]" *Id.* The group that overthrew the Kingdom established a provisional government and, after a failed attempt at annexation with the United States, declared itself the Republic of Hawai'i. *Id.* at 1511–12.

Approximately five years later, the United States annexed Hawai'i with the passage of the Newlands Joint Resolution. To provide for annexing the Hawaiian Islands to the United States (Newlands Resolution), No. 55, 30 Stat. 750 (1898); *see also* Apology Resolution at 1512. Upon annexation, the Republic of Hawai'i "ceded 1,800,000 acres of crown, government and public lands of the Kingdom of Hawaii [to the United States], without the consent of or compensation to the Native Hawaiian people of Hawaii or their sovereign government."[5] Apology Resolution at 1512. This court has recognized that the Republic "ced[ed] and transfer[red] to the United States the absolute fee and ownership of all public, Government, or Crown lands ... belonging to the Government of the Hawaiian Islands, together with every right and appurtenance thereunto appertaining[.]" *Trs. of the Office of Hawaiian Affairs v. Yamasaki*, 69 Haw. 154, 159, 737 P.2d 446, 449 (1987) (brackets in original) (citing Newlands Resolution at 750). Under the Newlands Resolution, the revenue and proceeds from these "ceded lands" were to "be used solely for the benefit of the inhabitants of the Hawaiian Islands for educational and other public purposes."[6] Newlands Resolution at 750.

---

3. The Honorable Gary W.B. Chang presided.

4. As discussed further *infra*, the remaining issues raised in Taxpayers' appeal are waived or were otherwise not properly preserved.

5. Although "[t]he public debt of the *Republic of Hawaii* ... [was] assumed by the government of the United States[,]" with the exception that "the liability of the United States in this regard shall in no case exceed four million dollars[,]" New-

lands Resolution at 751 (emphasis added), no compensation was made to the *Kingdom of Hawai'i, see* Apology Resolution at 1512.

6. Taxpayers assert that "[t]he Newlands Resolution established the Ceded Lands Trust[.]" As discussed further *infra* in part III(B), this court need not decide whether a trust was created by the Newlands Resolution because Taxpayers did not properly preserve this point in the tax appeal court.

Congress then passed the Organic Act, Act of April 30, 1900, c. 339, 31 Stat. 141 (1900), *reprinted in* 1 Hawai'i Revised Statutes (HRS) 86 (2009), which "provided a government for the territory of Hawaii and defined the political structure and powers of the newly established Territorial Government[.]" Apology Resolution, at 1512. The Organic Act stated, in relevant part:

> That the public property ceded and transferred to the United States by the Republic of Hawaii under the joint resolution of annexation ... shall be and remain in the possession, use, and control of the government of the Territory of Hawaii, and shall be maintained, managed, and cared for by it, at its own expense, until otherwise provided for by Congress, or taken for the uses and purposes of the United States by direction of the President or of the governor of Hawaii.

Organic Act, § 91.

### 2. Hawaiian Home Lands

Congress later enacted the Hawaiian Homes Commission Act, 1920, Act of July 9, 1921 (HHCA), Pub.L. 67–34, 42 Stat. 108, *reprinted in* 1 HRS 261 (2009), which mandated that approximately 200,000 acres of the ceded lands be held in trust for the benefit of native Hawaiians.[7] *See Bush v. Watson*, 81 Hawai'i 474, 477 n. 3, 918 P.2d 1130, 1133 n. 3 (1996). Congress enacted the HHCA after holding hearings and determining that Hawaiians were a "dying race," with the number of "full-blooded Hawaiians" dropping from 142,650 in 1826 to 22,600 in 1919. H.R.Rep. No. 66–839, at 2 (1920). The report of the Committee on the Territories quoted Territorial Senator John H. Wise, an architect of the HHCA, in discussing "the reasons for the decline of the Hawaiian race" and the need for such legislation:

> The Hawaiian people are a farming people and fishermen, out-of-door people, and when they were frozen out of their lands and driven into the cities they had to live in the cheapest places, tenements. That is one of the big reasons why the Hawaiian people are dying. Now, the only way to save them, I contend, is to take them back to the lands and give them the mode of living that their ancestors were accustomed to and in that way rehabilitate them.

*Id.* at 1–4 (quoting Hearings before the Committee on the Territories, House of Representatives, 66th Cong., 2d Sess., on Proposed Amendments to the Organic Act of the Territory of Hawai'i, Feb. 3, 4, 5, 7 and 10, 1920, at 39–40 (statement of Sen. John H. Wise)).

### 3. Admission Act

In 1959, Congress passed the Hawai'i Admission Act (Admission Act), Pub.L. No. 86–3, 73 Stat. 4 (1959), *reprinted in* 1 HRS 135 (2009), which made Hawai'i a state of the Union. As a condition of admission, "the State of Hawai'i agreed to hold certain lands granted to the State by the United States in a public land trust," subject to the trust provisions set forth in § 5(f) of the Admission Act.[8] *Office of Hawaiian Affairs v. State*, 96 Hawai'i 388, 390, 31 P.3d 901, 903 (2001); *see* Admission Act § 5. Section 5(b) of the Admission Act granted to the newly established state the United States' title to "all the public lands and other public property, and to all lands defined as 'available lands' by section

---

7. The term "native Hawaiian" is defined in the HHCA as "any descendent of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778." HHCA § 201(a).

8. Section 5(f) provides:

The lands granted to the State of Hawaii by subsection (b) of this section and public lands retained by the United States under subsections (c) and (d) and later conveyed to the State under subsection (e), together with the proceeds from the sale or disposition of any such lands and the income therefrom, shall be held by said State as a public trust for the support of the public schools and other public educational institutions, for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended, for the development of farm and home ownership on as widespread a basis as possible for the making of public improvements, and for the provision of lands for public use. Such lands, proceeds, and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of said State may provide, and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States.

203 of the [HHCA], within the boundaries of the State of Hawaii[.]" The Admission Act stated in relevant part: "lands granted to the State of Hawaii by subsection (b) . . . together with the proceeds from the sale or other disposition of any such lands and the income therefrom, shall be held by said State as a public trust[.]" Admission Act § 5(f).

Section 4 of the Admission Act further required the State of Hawai'i to adopt the HHCA as part of its Constitution and barred changes in the qualifications of the lessees without the consent of the United States.[9] The United States and the State thus entered a compact under which the State would assume the management and disposition of the Hawaiian home lands. *See* Haw. Const. art. XI, § 2 (1959) (renumbered art. XII, §§ 1-2 (1978)). This court has noted that "the federal government set aside certain public lands to be considered Hawaiian home lands to be utilized in the rehabilitation of native Hawaiians, thereby undertaking a

9. Section 4 provides:

As a compact with the United States relating to the management and disposition of the Hawaiian home lands, the Hawaiian Homes Commission Act, 1920, as amended, shall be adopted as a provision of the Constitution of said State, as provided in section 7, subsection (b) of this Act, *subject to amendment or repeal only with the consent of the United States,* and in no other manner: *Provided,* That (1) sections 202, 213, 219, 220, 222, 224 and 225 and other provisions relating to administration, and paragraph (2) of section 204, sections 206 and 212, and other provisions relating to the powers and duties of officers other than those charged with the administration of said Act, may be amended in the constitution, or in the manner required for State legislation, . . . (2) that any amendment to increase the benefits to lessees of Hawaiian home lands may be made in the constitution, or in the manner required for State legislation, but the *qualifications of lessees shall not be changed except with the consent of the United States;* . . . .

(Some emphasis in original and some added.)

10. HRS § 40-35(a) (1993) provides that "[a]ny disputed portion of moneys representing a claim in favor of the State may be paid under protest to a public accountant of the department, board, bureau, commission, or other agency of the State with which the claimant has the dispute."

11. Although not cited by Corboy, original lessees on Hawaiian home lands in Maui County are entitled to an exemption from real property taxes under HHCA § 208 and Maui County Code

trust obligation benefiting [sic] the aboriginal people" and "the State of Hawaii assumed this fiduciary obligation upon being admitted into the Union as a state." *Ahuna v. Dep't of Hawaiian Home Lands,* 64 Haw. 327, 338, 640 P.2d 1161, 1168 (1982).

## B. Taxpayers' Complaints

On August 2, 2007, Maui County homeowner John M. Corboy (Corboy) paid under protest his real property taxes of $1,023.10 for the first half of tax year 2007–2008.[10] He asserted that he was entitled to an exemption from real property taxes equal to the exemption granted to Hawaiian homestead lessees.[11] He argued that the tax exemption for Hawaiian homestead lessees violated his rights, as a non-native Hawaiian, to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and federal civil rights laws.

(MCC) § 3.48.555. HHCA § 208 provides, in pertinent part:

**Conditions of leases.** Each lease made under the authority granted the department by section 207 of this Act, and the tract in respect to which the lease is made, shall be deemed subject to the following conditions, whether or not stipulated in the lease:
(1) The original lessee shall be a native Hawaiian, not less than eighteen years of age. . . .
. . . .
(7) The lessee shall pay all taxes assessed upon the tract and improvements thereon. . . .
(8) The lessee shall perform such other conditions, not in conflict with any provision of this Act, as the department may stipulate in the lease; *provided that an original lessee shall be exempt from all taxes for the first seven years after commencement of the term of the lease.*
(Emphasis added).
MCC § 3.48.555 provides, in pertinent part:
Exemptions from real property taxes as set forth in . . . section 208 of the Hawaiian Homes Commission Act, 1920, . . . shall remain in effect and be recognized by this County in its administration of the real property tax system; provided, that real property leased under homestead and not general leases pursuant to the authority granted the department of Hawaiian home lands by section 207 of the Hawaiian Homes Commission Act, 1920, *shall be exempt from real property taxes, the seven-year limitation on the exemption afforded by section 208 of the Hawaiian Homes Commission Act, 1920, notwithstanding.*
(Emphasis added).

On August 14, 2007, the Maui County Department of Finance advised Corboy that:

Property taxes applied to the Department of Hawaiian Home Lands (DHHL) are governed by [MCC] 3.48.555 and authorized under the Hawaii State Constitution and [HRS].

Your property does not fall under either provision and is, therefore, not appropriate for an exemption under the MCC or the HRS.

Kaua'i County homeowner Stephen Garo Aghjayan (Aghjayan), City and County of Honolulu homeowners Gary P. Smith (Smith) and Earl F. Arakaki (Arakaki), and Hawai'i County homeowner J. William Sanborn (Sanborn) likewise paid under protest their real property taxes for 2007–2008 by claiming an exemption equal to the exemption granted to Hawaiian homestead lessees under the HHCA and their respective county laws.[12] Smith and Arakaki also pursued their protested payments by filing Notices of Real Property Assessment Appeal with the Board of Review for the City and County of Honolulu.[13]

On August 31, 2007, Corboy and Aghjayan pursued their claims for a real property tax exemption by filing a complaint in the tax appeal court (TX No. 07–0086) pursuant to HRS § 40–35(b).[14] On April 14, 2008, Corboy and Aghjayan filed an Amended Complaint for Refund of Real Property Taxes Paid Under Protest Pursuant to HRS § 40–35 and for Declaratory and Injunctive Relief (amended complaint), naming as defendants the Attorney General, State of Hawai'i; the County of Maui; and the County of Kaua'i.[15] In their amended complaint, Corboy and Aghjayan alleged, in pertinent part, as follows:

1. This action is brought under HRS §§ 40–35 and 232–3[16] and Rules 1 and

---

12. Taxpayers did not specify which county codes they were challenging. However, Revised Ordinances of Honolulu (ROH) § 8–10.23 and Kaua'i County Code (KCC) § 5A–11.23(a) are nearly identical to MCC § 3.48.555, quoted *supra* note 11, and provide that "real property leased under homestead and not general leases ... shall be exempt from real property taxes, *the seven year limitation on the exemption ... notwithstanding.*" (Emphasis added). Accordingly, the counties of Maui, Honolulu and Kaua'i extend the tax exemption for Hawaiian homestead lessees beyond the seven year period mandated by HHCA § 208(8). However, it appears that the County of Hawai'i requires that Hawaiian homestead lessees pay a "minimum tax" of between $25 and $100 after the seven-year exemption period expires:

Hawaiian home lands, as defined in section 201, Hawaiian Homes Commission Act, 1920, as amended, real property, exclusive of buildings, leased and used as a homestead (houselots, farm lots, and pastoral lots), pursuant to section 207(a) and subject to the conditions of sections 208 and 216 of the Hawaiian Homes Commission Act, 1920, *shall be exempt from real property taxes, except for the minimum tax, and as provided for by this section.* Disposition of Hawaiian home lands for other than homestead purposes is deemed fully taxable and will not qualify for the exemption granted by this section. The respective homestead lessee of Hawaiian home lands *shall continue to qualify and receive other personal exemptions,* provided that claims for the exemptions are timely filed, *including the seven-year limitation on the exemption afforded by section 208 of the Hawaiian Homes Commission Act, 1920.*

Hawai'i County Code (HCC) § 19–89 (emphasis added); *see also* HCC § 19–90(e) (providing that "there shall be levied upon each individual parcel of real property taxable under this chapter, a minimum real property tax of $100 per year," except under certain conditions where the minimum tax is lower).

13. The record does not reflect the result of Smith's and Arakaki's appeals to the Board of Review. The record does, however, reflect that Smith and Arakaki previously appealed their assessments for tax year 2006 to the Board of Review, and that the Board of Review determined that "[t]he assessed value of the property as determined by the director is correct." In their Complaint, Smith and Arakaki assert that "the Board denied the appeals of both [Smith and Arakaki in 2006] without deciding or even mentioning the constitutional questions raised." The Complaint does not, however, directly allege that Smith's and Arakaki's real property taxes from tax year 2006–2007 are at issue in the instant case.

14. HRS § 40–35(b) provides, in pertinent part, that "[a]ny action to recover payment of taxes under protest shall be commenced in the tax appeal court."

15. The parties later stipulated to the intervention of the State of Hawai'i as a defendant.

16. HRS § 232–3 (2001), concerning tax appeals provides:

Grounds of appeal, real property taxes. In the case of a real property tax appeal, no

2(a)(4) of the Tax Appeal Court of the State of Hawaii for refund of real property taxes paid to the Counties of Maui and Kauai under protest. Plaintiffs seek, under the Constitution and civil rights laws of the United States, exemption from real property taxes equal to the exemptions given respectively, by the County of Maui and County of Kauai to Hawaiian homestead lessees; and demand, among other relief, an equivalent exemption and refund of any amounts greater than would have been payable if they (each Plaintiff respectively) had that same or equivalent exemption.

## CLEAR AND CONCISE STATEMENT OF BASIS FOR APPEAL (HRS § 232-3)

6. The County of Maui and its officials, and the County of Kauai and its officials, acting in concert with the State of Hawaii and its officials and the United States and its officials and the other counties and their officials, by exempting Hawaiian homestead lessees from some or all real property taxes but denying an equivalent exemption to other property owners in their respective counties, deprive Plaintiffs, and other real property owners similarly situated in each of their counties, of equal protection, privileges and immunities under the law in violation of the Equal Protection Clauses of the Fifth and Fourteenth Amendments and Federal civil rights laws. Plaintiffs and others similarly situated, solely because they are not "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian islands previous to 1778" can never become Hawaiian homestead lessees; and their ownership of an interest in real property in the counties of Maui and Kauai, respectively, therefore, can never qualify for the exemption. Because thousands of

Hawaiian homestead lessees pay reduced or no real property taxes in the counties of Maui and Kauai, but still receive the benefit of municipal services including some or all of the following: police and fire protection; emergency medical care services; culture and recreation; planning, zoning and permitting; sewage and solid waste collection and disposal; public mass transportation; human services; traffic safety and control; and construction and maintenance of public streets, roads, bridges, walkways and drainage and flood control systems and other county infrastructure and services, Plaintiffs and all property owners similarly situated in each of those counties each pay proportionately more twice each year to carry them. Every six months these citizens of the United States are each forced to pay extra dollars to their respective counties of Maui and Kauai to support a group selected not by need or merit but because of their racial ancestry. Refund alone will not provide adequate relief because, unless declaratory and injunctive relief is granted, a multiplicity of suits year after year by Plaintiffs and others similarly situated will be necessary.

7. Since this action draws into question the constitutionality of State of Hawaii and Federal laws (including § 4 of the 1959 Admission Act which required as a condition of statehood that the State of Hawaii adopt the [HHCA,] still mandates that the State continue to carry out the HHCA and forbids repeal or amendment without the consent of the United States), Plaintiffs will promptly serve this complaint and the attached Notice of Constitutional Question on the Attorney General of the United States and the United States Attorney for the District of Hawaii and on the Attorney

taxpayer or county shall be deemed aggrieved by an assessment, nor shall an assessment be lowered or an exemption allowed, unless there is shown:

(2) Lack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved, or

(3) Denial of an exemption to which the taxpayer is entitled and for which the taxpayer has qualified, or

(4) Illegality, on any ground arising under the Constitution or laws of the United States or the laws of the State (in addition to the ground of illegality of the methods used, mentioned in clause (2)).

General of the State of Hawaii.[17]

Accordingly, Corboy and Aghjayan sought the following relief:

A. **Find and Declare:**

1. **As to real property tax exemptions,** in the absence of equivalent exemptions for Plaintiffs and other real property owners similarly situated in each of the Counties of Maui and Kauai, the special exemptions from real property taxes given to Hawaiian homestead lessees by each of those Counties violate the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and 2000d et. seq. and/or other statutory and common law and are invalid;

2. **As to the HHCA, the Compact in § 4 of the 1959 Admission Act, and Art. XII of the Hawaii Constitution,** in the absence of equivalent homestead leases and benefits for every Hawaii citizen without regard to race or ancestry, the HHCA, the Compact in § 4 of the Admission Act of March 18, 1959, and Article XII, §§ 1–3 of the Constitution of the State of Hawaii, mandate, encourage, aid, abet or act in concert with the counties of Maui and Kauai (and other counties) in the deprivation of the equal protection of the laws and equal privileges and immunities under the laws of Plaintiffs and others similarly situated, violate the Fifth and Fourteenth Amendments and/or 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and 2000d et. seq. or other federal statutory and common law, and are invalid;

B. **Enter judgment for refund** to each Plaintiff by the applicable County of Maui and County of Kauai of all amounts paid under protest for real property taxes greater than would have been payable if each Plaintiff had an exemption equivalent to that for Hawaiian homestead lessees;

C. **Enjoin Defendants.** Permanently enjoin each of the Defendants and all persons acting in concert with them, from further implementation of any real property tax exemptions given exclusively to Hawaiian homestead lessees and from any further or other discrimination between taxpayers on the basis of race, ancestry or status as Hawaiian homestead lessees in the assessment, levy and collection of taxes. This injunction should also provide that, for as long as HHCA § 208(8) and the compact in Admission Act § 4 remain in effect, and any Hawaiian homestead lessee enjoys exemption from all taxes during the first 7 years after the commencement of the term of the lease, Plaintiffs and all other taxpayers similarly situated in the County of Maui and the County of Kauai "shall" also "be exempt from all taxes."

D. **Costs, attorneys fees, other relief.** Allow Plaintiffs their costs, reasonable attorneys' fees, and such other further relief as is just.

Corboy and Aghjayan's amended complaint was filed by attorney H. William Burgess (Burgess), who filed nearly identical complaints with the tax appeal court concerning real property taxes paid under protest for tax year 2007–2008 on behalf of Smith and Arakaki (TX No. 07–0099), and Sanborn (TX No. 07–0102). Burgess also appealed Taxpayers' real property tax assessments for tax year 2008–2009 by filing Notices of Appeal directly with the tax appeal court (TX Nos. 08–0039, 08–0040, 08–0041, 08–0042, and 08–0043) pursuant to HRS § 232–16 (Supp. 2007).[18] The appeals in TX Nos. 08–0039, 08–0040, 08–0041, 08–0042, and 08–0043, and Burgess's three tax appeal court complaints

---

**17.** Although a copy of the complaint was served on the Attorney General of the United States and the United States Attorney for the District of Hawaii, the United States was not made a party to this action.

**18.** HRS § 232–16, concerning appeals from assessments, provides in pertinent part:

**Appeal to tax appeal court.** A taxpayer or county, in all cases, may appeal directly to the tax appeal court without appealing to a state board of review, or any equivalent administrative body established by county ordinance. An appeal to the tax appeal court is properly commenced by filing, on or before the date fixed by law for the taking of the appeal, a written notice of appeal in the office of the tax appeal court and by service of the notice of appeal on the director of taxation and, in the case of an appeal from a decision involving the county as a party, the real property assessment division of the county involved. An appealing taxpayer shall also pay the costs in the amount fixed by section 232–22.

in TX Nos. 07–0086, 07–0099 and 07–0102, were consolidated under Corboy and Aghjayan's case in TX No. 07–0086.

## C. Summary Judgment Motions

On April 20, 2009, the Attorney General and the State of Hawai'i filed a motion for summary judgment, in which the defendant counties joined.[19] In its Memorandum in Support of State of Hawaii's and Attorney General's Motion for Summary Judgment, the State sought:

> judgment in full for the State, and against [Taxpayers] on the ground that the alleged discriminatory tax exemption is based upon the indisputably non-suspect classification of whether one is *a homestead lessee* (pursuant to [the HHCA]) or not. Assuming this court accepts that premise, this case will be very simple, as the State will need only to demonstrate a conceivable rational basis for the tax exemption. The State demonstrates in this motion that many such conceivable rational bases exist to uphold the tax exemption. The State also shows that Taxpayers' federal civil rights claims are without merit.
>
> In the unlikely ... event this [c]ourt decides that the tax exemption involves an ostensibly racial classification that [T]axpayers have standing to attack, then this [c]ourt would likely deny this motion for summary judgment. In that unlikely event, the State will file a subsequent and different summary judgment motion ... arguing that even if the classification generating the differential tax treatment is deemed to be based upon whether the taxpayer is native Hawaiian or not, Tax-

payers' Equal Protection challenge is still not subject to strict scrutiny, but rather to the deferential *Morton v. Mancari* "tied rationally" standard of review applicable to native peoples. *See Morton v. Mancari*, 417 U.S. 535, 555 [94 S.Ct. 2474, 41 L.Ed.2d 290] (1974).[20] The State would then demonstrate that the tax exemptions satisfy that *Mancari* standard....

(Footnote omitted).

The State argued that "[n]o suspect classification is involved in the HHCA homestead real property tax exemption" "because the tax exemptions are *not* based upon whether a taxpayer is native Hawaiian or not, but rather whether the taxpayer is a *homestead lessee of HHCA land*." (Some formatting altered) (emphasis in original). The State asserted that "*native Hawaiians* who are *not* homestead lessees of HHCA land also do *not* receive the tax exemption[.]" (Emphasis in original). The State further argued that "[b]ecause the status of being a homestead lessee versus not being one is plainly not a suspect classification, the tax exemptions are not subject to strict scrutiny, but rather to the rational basis test." (Citation omitted).

The State, relying on *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 19, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), also argued that Taxpayers' argument that a suspect classification is involved "because only native Hawaiians can become homestead lessees of HHCA land" failed because "[e]qual [p]rotection analysis requires, first 'delineation of the disfavored class,'" which in this case are those taxpayers who are *not homestead lessees of HHCA land*—a

---

19. The County of Kaua'i also filed a motion to dismiss on April 30, 2009, which it later withdrew.

20. In *Mancari*, the United States Supreme Court upheld a statutory employment preference for American Indians in the Bureau of Indian Affairs against a challenge brought pursuant to the Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 U.S.C. § 2000e et seq. (1970 ed., Supp. II), and the due process clause of the Fifth Amendment to the United States Constitution. 417 U.S. at 537, 551, 555, 94 S.Ct. 2474. The Court's conclusion that the preference did not constitute invidious racial discrimination was based in part on the "unique legal status of

Indian tribes under federal law and upon the plenary power of Congress ... to legislate on behalf of [them]." *Id.* at 551, 94 S.Ct. 2474. The Court analogized the preference to "the constitutional requirement that a United States Senator, when elected, be 'an Inhabitant of that State for which he shall be chosen,'" *id.* at 554, 94 S.Ct. 2474 (citation omitted), and concluded that "the preference is political rather than racial in nature[,]" *id.* at 554 n. 24, 94 S.Ct. 2474. Thus, the Court concluded that "[a]s long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." *Id.* at 555, 94 S.Ct. 2474.

group that includes most native Hawaiians." (Emphasis in original).

The State further argued that Taxpayers lacked standing to challenge the HHCA on the ground that only native Hawaiians are eligible to become homestead lessees of HHCA lands because "there is no allegation, much less evidence, that Taxpayers actually desire to become homestead lessees of HHCA lands." [21] Accordingly, the State argued, "eliminating the native Hawaiian qualification to become a HHCA homestead lessee would have no effect upon Taxpayers as they would still *not* become HHCA homesteaders." (Emphasis in original).

Having argued that the classification is subject to rational basis review, the State asserted that "[t]here are many conceivable rational bases to uphold the tax exemption for HHCA homestead lessees," including that the HHCA imposes "severe restrictions" on alienation of a lessee's interest, "severely limits who may succeed to a homestead lease upon the lessee's death[,]" and that "HHCA homestead lessee households have below-average household income." (Some formatting altered).

The State also argued that "Taxpayers' federal civil rights claims fail because the tax exemptions are *not* based upon any ostensibly racial criteria, but rather upon whether one is a HHCA homesteader or not," and because the *"federally* mandated [HHCA] expressly authorizes the county tax exemptions." (Formatting altered) (emphasis in original). The State further argued that "[b]ecause the HHCA ... is a *federally* mandated law, ... it cannot itself violate *another* more general *federal* law. That is because a *specific* statute like HHCA § 208(8) cannot be invalidated by a far more *general* statute, which the federal civil rights statutes certainly are." (Emphasis in original).

Taxpayers filed a Memorandum in Opposition to State's Motion for Summary Judgment on May 1, 2009. Taxpayers argued that in *Rice v. Cayetano*, 528 U.S. 495, 514, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000), the United States Supreme Court rejected an argument similar to that set forth by the State in the instant case, that the real property tax exemption does not involve a suspect classification.[22] Taxpayers further asserted that:

> the "special" exemption from real property taxes at issue in this case is not based merely on being a lessee of Hawaiian home lands. It is limited to DHHL *homestead* leases for which only one class of persons selected using a racial classification is eligible; and the HHCA only requires the exemption for the first seven years after commencement of the term of each original

---

**21.** In their Reply Brief to this court, Taxpayers assert that "[t]he State's assertion that [Taxpayers] do not 'want' a homestead lease is incorrect." However, Taxpayers do not point to any evidence in the record to indicate that they desire to become homestead lessees. To the contrary, in their Memorandum in Opposition to State's Motion for Summary Judgment, Taxpayers asserted that "[n]one of the [Taxpayers] in these eight consolidated cases ask for award of a homestead lease. Rather each of these citizens comes to this Court for redress of the assessment of his real property taxes without the benefit of an exemption equivalent to that given to Hawaiian homestead lessees." Accordingly, as discussed further *infra* in part III(A), the record does not establish that Taxpayers are interested in participating in the homestead lease program.

**22.** In *Rice*, the United States Supreme Court struck down a provision of the Hawai'i Constitution that limited the right to vote for trustees of the Office of Hawaiian Affairs (OHA) to "qualified voters who are Hawaiians, as provided by law." 528 U.S. at 498–99, 509, 120 S.Ct. 1044.

The Court rejected the State's argument that the restriction did not involve a racial category "but instead a classification limited to those whose ancestors were in Hawaii at a particular time, regardless of their race." *Id.* at 514, 120 S.Ct. 1044. The Court also noted that, "[s]imply because a class defined by ancestry does not include all members of the race does not suffice to make the classification race-neutral." *Id.* at 516–17, 120 S.Ct. 1044. The Court concluded that, in the context of the voting restriction, ancestry functioned as a proxy for race and the restriction therefore violated the Fifteenth Amendment to the United States Constitution, which provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged ... on account of race, color, or previous condition of servitude." *Id.* at 514–17, 120 S.Ct. 1044; U.S. Const. amend. XI, § 1. *Rice* did not address whether such a classification would violate the Fourteenth Amendment. 528 U.S. at 522, 120 S.Ct. 1044 ("The question before us is not the one-person, one-vote requirement of the Fourteenth Amendment, but the race neutrality command of the Fifteenth Amendment.").

homestead lessee. Each county is free of any federal mandate and can eliminate the discriminatory assessments after the first seven years of the original lease of each tract by simply enacting an ordinance. (Emphasis in original).

Taxpayers also argued that "there can be no genuine dispute that any *native Hawaiian* citizen of Hawaii is more favored than [Taxpayers], simply because he or she is eligible to compete on an equal basis for the exemption in question." (Emphasis in original). With regard to standing, Taxpayers asserted that:

> Each of the [Taxpayers] is affected personally by the challenged exemption because, if he was accorded the equal privileges and immunities to which he is entitled, i.e., exemption equivalent to that for homesteaders, his real property taxes would be no more than $100 per year and he would be entitled to a refund for the two or three most recent years at issue.
>
> None of these five [Taxpayers] in these eight consolidated cases ask for award of a homestead lease. Rather each of these citizens comes to this Court for redress of the assessment of his real property taxes without the benefit of an exemption equivalent to that given to Hawaiian homestead lessees.

Taxpayers also argued that *Mancari* does not apply to the HHCA tax exemption, but rather "applies only to federally recognized Indian tribes, their members, and regulation of Indian tribes and members by the Bureau of Indian Affairs[.]" Taxpayers also argued that, "[i]n *Rice,* the [United States] Supreme Court rejected the *Mancari* defense[,]" and there is therefore "no need to reach the issues of 'indigenous' status and 'special relationships.' " [23]

In addition, Taxpayers argued that (1) "Congress' exercise of its power under the

Admission Clause to admit Hawaii as a State of the Union does not immunize the challenged programs from judicial review[;]" (2) "[t]he Equal Footing Doctrine and the rule that Congress cannot authorize a state to violate the Equal Protection Clause lead to the conclusion that a congressional admission act could not put a new state on an unequal footing by authorizing it to deny on account of race the right to receive public benefits[;]" (3) "Congress [cannot] immunize governmental conduct from judicial review by declaring a trust or making an unconstitutional contract[;]" and (4) "[c]laims to Hawaiian home lands raise grave constitutional concerns" because "[t]he HHCA clearly 'purports' to cloud the title now held by the State of Hawaii[.]" (Some formatting altered).

On May 1, 2009, Taxpayers filed a Counter–Motion for Summary Judgment. In their Memorandum in Support of Counter–Motion for Summary Judgment, Taxpayers alleged the following "[k]ey facts":

1. All four counties of the State of Hawaii provide special exemptions from real property taxes for lessees of DHHL homestead lots.

2. Under the HHCA, only "native Hawaiians" are eligible for award of DHHL homestead leases.

3. The definition of "native Hawaiian" which is the foundation and only reason for the existence of HHC–DHHL is a racial classification.

4. Use of a racial classification by any governmental actor, federal, state or local, is subject to strict scrutiny.

5. The counties' special exemptions for homestead lessees have a racial purpose and a racial effect.

6. The counties' exemptions cannot pass strict scrutiny because the counties, like the federal and state governments,

---

**23.** In *Rice,* the Court determined that the *Mancari* analysis did not extend to a voting provision that, the Court concluded, classified on the basis of race and therefore violated the Fifteenth Amendment. 528 U.S. at 520–22, 120 S.Ct. 1044; *see supra* note 22. The Court, however, declined to address whether "native Hawaiians have a status like that of Indians in organized tribes[.]" *Id.* at 518–19, 120 S.Ct. 1044. Thus,

the Court did not reject *Mancari* in its entirety. Rather, the Court determined that, even assuming *arguendo* that *Mancari* can be extended to native Hawaiians, it nevertheless "does not follow from *Mancari* ... that Congress may authorize a State to establish a voting scheme that limits the electorate for its public officials to a class of tribal Indians, to the exclusion of all non-Indian citizens." *Id.* at 520, 120 S.Ct. 1044.

have no compelling interest in discriminating between home owners on the basis of racial ancestry.

(Footnote omitted).

Taxpayers argued that "the definitions of 'Hawaiian' and 'native Hawaiian' are racial classifications," and that "no compelling interest requires the State or its counties to discriminate between citizens or *homeowners* on the basis of race." (Emphasis in the original).

The court held a hearing on the State's summary judgment motion on May 11, 2009. During the hearing, the State argued that Taxpayers did not have "standing to [ ] challenge the fact that only native [H]awaiians can become homesteaders." The State explained its standing argument as follows:

> [Deputy Attorney General (DAG):] What we're saying is because they do not want a homestead, they've affirmatively stated in their declaration in their opposition that they do not want a homestead that they have to [sic] right to then no standing to then challenge the fact that only native [H]awaiians can become homesteaders. And, so, because they don't want a homestead there's no reason for them to challenge any qualification for becoming a homesteader, therefore, they can't raise or challenge the qualifi—any of the qualifications for becoming a homesteader including the native Hawaiian—native [H]awaiian qualification, therefore, there's no basis at all for them to suggest that there's any suspect classification involved in this particular tax appeal.

> THE COURT: So, you're saying a non[–H]awaiian non lessee can never have standing. The only possible class of persons that can challenge the homestead exemption is a [H]awaiian non lessee.

> [DAG:] Well, again, they have the general standing to challenge the homestead exemption. What we're saying is they can't try and raise the fact that only native [H]awaiians can become homesteaders. They can't raise that aspect unless they want to be a homesteader. And, so, therefore, if they're only allowed—because they don't want a homestead they can't challenge the aspect of becoming a homestead-

er any aspect or any qualification of becoming a homesteader including the native [H]awaiian qualification. And, it's that native [H]awaiian qualification that's the key to their attempt to try and create a suspect classification or try and claim that this tax exemption somehow discriminates on the basis of the suspect classification and because they don't want homestead they have no right and standing to challenge the qualification any qualification for becoming a homesteader including the native [H]awaiian qualification.

The State asserted that "[Taxpayers] have general standing to challenge the fact that a homesteader gets the exemption and the non homesteader doesn't. That classification is clearly a non suspect one . . . . they have a general standing to challenge the fact that they don't get the tax exemption and other people do[.]"

The tax appeal court stated:

> This is an equal protection challenge and the court does not view this case as raising a suspect classification. The court does believe that this is a rationale [sic] basis situation and that is the standard this court is applying to this matter. There is no suspect class involved. And, therefore, the court is inclined to conclude that there is a rationale [sic] basis for the classification involved in this case.

> And, for that and any other good cause on the record, the court is inclined to grant the motion.

The tax appeal court then asked Burgess, counsel for Taxpayers, "if [he] wish[ed] to make any further argument or record at this time." Burgess argued that the classifications presented in the HHCA and, specifically in § 208, are racial classifications, and asked the court to analyze the classifications under strict scrutiny. The tax appeal court then asked Burgess whether *Rice* was distinguishable because "in the case at bar you have a situation where within the [H]awaiian race you have lessees and non lessees[.]" Burgess argued that

> it's not a valid distinction because if every—if everyone leasing Hawaiian home lands, for example, was exempt from the

taxes, there would be no problem. But that's not the case. The [HHCA] itself specifically says that like other lessees of home lands are taxed just like everyone else.[24]

The tax appeal court granted the State's motion for summary judgment, concluding that there was no evidence in the record to refute the rational bases offered by the State.

The tax appeal court held a hearing on Taxpayers' counter-motion for summary judgment on June 8, 2009. Taxpayers advised the tax appeal court that they intended to appeal the prior summary judgment decision, and stated that "perhaps it would be appropriate to present the arguments for this motion at this time for the record." Taxpayers' subsequent argument to the tax appeal court is somewhat unclear. Taxpayers discussed their theory that the Newlands Resolution created a Ceded Lands Trust, and asserted that the United States, in requiring that the State of Hawai'i adopt the HHCA, was in violation "not only of the trust but also of the constitution, the equal protection component of the Fifth Amendment, the trust law, the basic trust law, and also the equal footing doctrine." Taxpayers also appeared to argue that, in adopting the Hawai'i Constitution, the State of Hawaii "violated its duty as trustee." Taxpayers further argued that the counties' extension of the real property tax exemption "to Hawaiian homestead lessees for the full term of the lease to some extent" "violates . . . the basic trust law[.]"

Taxpayers also asserted that "any use of a racial classification by any governmental actor" is reviewed under strict scrutiny, and that "the definition of [n]ative Hawaiian . . . and Hawaiian . . . is a racial classification." Taxpayers also asserted that the tax exemption is "illegal" because it violates trust law.

In response, the State argued that the tax appeal court's previous ruling "would necessarily preclude summary judgment for [Taxpayers]." The tax appeal court denied Taxpayers' motion for summary judgment, noting that "the court will maintain its consistency with its ruling at the prior hearing."

On June 26, 2009, the tax appeal court filed its Order Granting State of Hawaii's and Attorney General's Motion for Summary Judgment. On July 29, 2009, the tax appeal court filed its Order Denying [Taxpayers'] Counter–Motion for Summary Judgment. On August 7, 2009, the tax appeal court entered its final judgment "in favor of the State of Hawaii, the Attorney General, and in favor of each of the Counties in each case in which the respective county is a Defendant–Appellee."

### D. Taxpayers' appeal

A timely appeal followed. Upon Taxpayers' motion, this court accepted transfer of the case on December 29, 2009.[25] In their Opening Brief, Taxpayers present the following points of error: [26]

**A. Legality of HHCA adopted by Congress in 1921.** Whether the [HHCA] violated and still violates the Equal Protection component of the Fifth Amendment and the fiduciary duty of the United States as Trustee of the Ceded Lands Trust created in 1898 by the Annexation Act.

. . .

**B. Imposition of HHCA compact on the new State of Hawaii in 1959.** Whether the United States, by § 4 of the Admission Act of March 18, 1959, Pub. L 86–3, 73 Stat. 4, (which required, as a condition of statehood and as a compact

24. It is not clear which "other lessees" Burgess was referring to. However, under HHCA § 208, only "an original lessee" is exempted from real property taxes, and "[t]he original lessee shall be a native Hawaiian."

25. We subsequently denied Taxpayers' request for an injunction pending appeal. On April 14, 2010, Taxpayers filed a petition for a writ of certiorari with the United States Supreme Court, seeking review of this court's order denying an

injunction pending appeal. *See* Docket of the Supreme Court of the United States in No. 09–1256, *available at http://www.supremecourt.gov/docket/docket.aspx.* The Court denied Taxpayers' petition on June 21, 2010. Orders List at 7, *available at http://www.supremecourt.gov/orders/courtorders/062110zor.pdf.*

26. In their Opening Brief, Taxpayers identify their points of error as "Questions Presented."

with the United States, that the new State of Hawaii adopt the HHCA and continue to carry it out) also violated the Fifth Amendment and the fiduciary duty of the United States as Trustee of the Ceded Lands Trust as well as the Equal Footing Doctrine;

. . .

**C. Adoption of HHCA by State in 1959 and continuing to implement it.** Whether the State of Hawaii, by agreeing to the compact and adopting the HHCA, incorporating it into Hawaii's Constitution and continuing to implement it, violates the Fourteenth Amendment, federal civil rights laws, and the State's fiduciary duty as Trustee of the federal Ceded Lands Trust;

. . .

**D. The counties' special exemptions for Hawaiian homestead lessees.** Whether each of the four counties of the State of Hawaii, by giving Hawaiian homestead lessees special exemption from real property taxes and depriving Appellants and other homeowners similarly situated of the same exemption, violates the Fourteenth Amendment and other provisions of the Constitution and laws of the United States as well as each of the county's fiduciary duties as political subdivisions of the State of Hawaii, Trustee of the Ceded Lands Trust.

. . .

**E. The Tax Appeal Court's final judgment and several orders.** Whether the Tax Appeal Court erred in granting the State's motion for summary judgment and the counties' joinders in that motion; and in denying Appellants' counter-motion for summary judgment.

With regard to the tax exemptions, Taxpayers argue that, because only native Hawaiians can become homestead lessees, the State and counties violate the Fourteenth Amendment by providing real property tax exemptions to homestead lessees and not to Taxpayers and others similarly situated.

In their Answering Brief, the State argues that the challenged tax exemptions do not involve a racial classification, but instead classify on the basis of HHCA homesteader status, and therefore are *not* subject to strict scrutiny. The State further argues that "Taxpayers' argument that only native Hawaiians can become homestead lessees of HHCA land is irrelevant for two independent reasons." First, the State argues that "the disfavored class," i.e., those who are not homestead lessees and cannot receive the tax exemptions, includes both native Hawaiians and non-native Hawaiians. Accordingly, the State argues, "there is no racial classification, and strict scrutiny is inapplicable."

Alternatively, the State argues that Taxpayers do not have standing to challenge the tax exemptions on the ground that only native Hawaiians can become homestead lessees, because Taxpayers have not established a desire to become homestead lessees. Accordingly, the State argues, Taxpayers do not have standing to argue that the native Hawaiian qualification turns the classification of homesteader vs. non-homesteader into a suspect classification. The State asserts that Taxpayers may therefore only challenge the tax exemption "in general—i.e., to challenge the fact that homesteaders receive the tax exemption, while non-homesteaders do not."

## II. STANDARD OF REVIEW

We first consider whether Taxpayers have standing to bring their claims. "Whether the circuit court has jurisdiction to hear the plaintiffs' complaint presents a question of law, reviewable *de novo*. A plaintiff without standing is not entitled to invoke a court's jurisdiction. Thus, the issue of standing is reviewed *de novo* on appeal." *Hawaii Medical Ass'n v. Hawaii Med. Serv. Ass'n, Inc.*, 113 Hawai'i 77, 90, 148 P.3d 1179, 1192 (2006) (citing *Mottl v. Miyahira*, 95 Hawai'i 381, 388, 23 P.3d 716, 723 (2001)).

## III. DISCUSSION

Taxpayers seek review of the tax appeal court's August 7, 2009 judgment, entered pursuant to its June 26, 2009 Order Granting State of Hawaii's and Attorney General's Motion for Summary Judgment. Accordingly, we focus our analysis on the claim alleged in Taxpayers' amended complaint and upon

which the tax appeal court's judgment was granted, i.e., Taxpayers' claim that the HHCA tax exemption and the HHCA, generally, violate the equal protection components of the Fifth [27] and Fourteenth Amendments.[28]

We note that Taxpayers' challenge to the HHCA tax exemption is, in essence, a challenge to the HHCA's native Hawaiian qualification for homestead lessees. In the tax appeal court and on appeal, Taxpayers have alleged that the tax exemption violates equal protection principles because only native Hawaiians are eligible to receive it. However, the tax exemption provision of the HHCA provides a tax exemption for "original lessee[s]" and not specifically to native Hawaiians. It is HHCA §§ 207(a) and 208(1), governing homestead lease eligibility requirements, which provide that lessees must be native Hawaiian. Accordingly, Taxpayers' allegations concerning the constitutionality of the tax exemption challenge those provisions of the HHCA that set forth the lease eligibility requirements. We therefore construe Taxpayers' challenge to the tax exemption afforded to homestead

lessees as a challenge to those lease eligibility provisions.[29]

**A. Taxpayers do not have standing to bring their constitutional challenges to the HHCA because they have not established an injury-in-fact sufficient to confer standing**

As set forth below, Taxpayers have failed to allege an injury-in-fact with regard to the HHCA's native Hawaiian ancestry qualification for homestead lessees. Accordingly, Taxpayers do not have standing to bring their challenges to the constitutionality of the tax exemptions for homestead lessees, or the HHCA, generally.

This court has stated that:

Though the courts of Hawaii are not subject to a "cases or controversies" limitation like that imposed upon the federal judiciary by Article III, § 2 of the United States Constitution, we nevertheless believe judicial power to resolve public disputes in a system of government where there is a separation of powers should be limited to those questions *capable of judicial resolution* and presented in an adversary con-

---

27. "The Fifth Amendment ... does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states." *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Nevertheless, the United States Supreme Court has held that the guarantee of equal protection applies to the federal government through the due process clause of the Fifth Amendment. *Id.* at 500, 74 S.Ct. 693. Because no federal defendants have been named in the instant case, and because "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment," *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (citation omitted), we do not discuss the Fifth Amendment further.

28. In their Opening Brief, Taxpayers also assert that the HHCA violates federal civil rights laws, and direct this court's attention to their respective complaints, wherein they asserted that the HHCA, Admission Act § 4, and article XII, sections 1–3 of the Hawai'i Constitution violate 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and 2000d et seq. However, Taxpayers' Opening Brief does not provide any argument concerning federal civil rights laws. This point of error may accordingly be deemed waived, Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7), and will not be further addressed.

In addition, although Taxpayers' "Questions Presented" raise challenges based on the equal footing doctrine and Taxpayers' theory that the Newlands Resolution created a land trust, these claims were not properly preserved or may otherwise be disregarded. *See infra*, part III(B).

29. Similarly, the respective county codes provide that "real property leased under homestead and not general leases *pursuant to the authority granted the department of Hawaiian home lands by section 207 of the [HHCA]*, shall be exempt from real property taxes, the seven-year limitation on the exemption ... notwithstanding." MCC § 3.48.555 (emphasis added); *see also* ROH § 8–10.23 (same); KCC § 5A–11.23 (same); HCC § 19–89 (providing an exemption for "Hawaiian home lands ... leased and used as a homestead ... pursuant to section 207(a) and subject to the conditions of sections 208 and 216 of the [HHCA]"). The county tax exemptions are therefore granted based on the same criteria as the HHCA tax exemption, i.e., they are granted to homestead lessees who meet the eligibility requirements set forth in HHCA § 207. Accordingly, we similarly construe Taxpayers' challenge to the respective county codes that effectuate the HHCA tax exemption, i.e., MCC § 3.48.555, ROH § 8–10.23, KCC § 5A–11.23, HCC § 19–89, as a challenge to the lease eligibility provisions.

text.... *In short, judicial intervention in a dispute is normally contingent upon the presence of a "justiciable" controversy.*

*Sierra Club v. Dep't of Transp.* (*Superferry I*), 115 Hawai'i 299, 319, 167 P.3d 292, 312 (2007) (emphasis added) (citations omitted).

■ This court has further explained that: Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated. And the crucial inquiry in its determination is *whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of the court's jurisdiction and to justify the exercise of the court's remedial powers on his behalf.*

*County of Kaua'i ex rel. Nakazawa v. Baptiste,* 115 Hawai'i 15, 26, 165 P.3d 916, 927 (2007) (quotation marks omitted) (emphasis added) (quoting *Life of the Land v. Land Use Comm'n,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981)).

■ We determine whether a plaintiff has alleged a "personal stake in the outcome of the controversy" sufficient to confer standing by asking: "(1) has the plaintiff suffered an actual or threatened injury ...; (2) is the injury fairly traceable to the defendant's actions; and (3) would a favorable decision likely provide relief for plaintiff's injury." *Superferry I,* 115 Hawai'i at 319, 167 P.3d at 312 (footnote and citation omitted) (ellipses in original).

■ "With respect to the first prong of this test, the plaintiff must show a 'distinct and palpable injury to himself [or herself]'" as opposed to an alleged injury that is "abstract, conjectural or merely hypothetical." *Mottl v. Miyahira,* 95 Hawai'i 381, 389, 23 P.3d 716, 724 (2001) (brackets in original) (citations and some quotation marks omitted) (quoting *Life of the Land,* 63 Haw. at 173 n. 6, 623 P.2d at 446 n. 6; *Doyle v. Okla. Bar Ass'n,* 998 F.2d 1559, 1566 (10th Cir.1993)). Moreover, a plaintiff must demonstrate "that they have suffered an injury to a recognized interest, as opposed to 'merely airing a political or intellectual grievance.'" *Id.* at 395, 23 P.3d at 730 (quoting *Akau v. Olohana Corp.,* 65 Haw. 383, 390, 652 P.2d 1130, 1135 (1982)).

Because this court is not bound by the same "cases or controversies" limitation as the federal courts, *see Superferry I,* 115 Hawai'i at 319, 167 P.3d at 312, federal cases concerning standing are not dispositive on this issue. Nevertheless, the Ninth Circuit Court of Appeals' analysis in *Carroll v. Nakatani,* 342 F.3d 934 (9th Cir.2003), is persuasive. In *Carroll,* the court affirmed the district court's grant of summary judgment in favor of the State and state defendants, on the ground that the plaintiffs lacked standing to raise equal protection challenges to various state programs. *Id.* at 948.

Specifically, plaintiff Carroll alleged injury from, inter alia, "[the Office of Hawaiian Affairs' (OHA)] allocation of benefits to native Hawaiians and Hawaiians." *Id.* at 947. Carroll asserted "that OHA discriminates against him on the basis of race through the operation of the OHA program[,]" but "offer[ed] no evidence that he [was] 'able and ready' to compete for, or receive, an OHA benefit" and "[did] not even identif[y] a program that he would be interested in receiving." *Id.* (citations omitted). Carroll also acknowledged that he had never applied for any OHA programs. *Id.* Accordingly, the court concluded that "Carroll lack[ed] standing because he fail[ed] to show an injury from the allocation of benefits to native Hawaiians and Hawaiians. He present[ed] only a generalized grievance, requesting the State to comply with his interpretation of the United States Constitution." *Id.*

Similarly, plaintiff Barrett challenged both OHA's business loan program and the HHCA homestead lease program. *Id.* at 938. Barrett had sought to obtain an OHA loan to open a copy shop. *Id.* at 941. However, his loan application to OHA was incomplete, and he had failed to comply with OHA's request to complete the omitted information and return his application. *Id.* at 941. In addition, Barrett admitted that he had not prepared a business plan or determined any of the proposed business's operational costs, and that "the only step taken in furtherance of his business was to speak with a sales clerk at Office Depot." *Id.* The court concluded that Barrett could not demonstrate he had been denied equal treatment

because he "fail[ed] to demonstrate he [was] 'able and ready' to compete on an equal basis for an OHA loan, or benefit from OHA's assistance in applying for one." *Id.* at 942. Accordingly, the court concluded that Barrett "fail[ed] to demonstrate an injury in fact," and therefore did not have standing to pursue his equal protection claim. *Id.* at 943.

With regard to Barrett's challenge to the HHCA homestead lease program, the court concluded that "Barrett adequately demonstrated an injury in fact." *Id.* The court noted that, in order to obtain a homestead lease, "*a person need only state a desire to obtain a lease* and provide certain personal information." *Id.* (emphasis added). Thus, Barrett suffered an injury in fact from the denial of his homestead lease application.[30] *Id.*

The reasoning of *Carroll* is consistent with the decisions of this court, which have required that a plaintiff demonstrate that he or she has "suffered an actual or threatened injury as a result of the defendants' conduct[.]" *See, e.g., Mottl*, 95 Hawai'i at 391, 23 P.3d at 726 (citation omitted); *Sierra Club v. Hawai'i Tourism Auth.*, 100 Hawai'i 242, 250, 59 P.3d 877, 885 (2002). For example, in *Mottl*, the plaintiffs (the labor union representing University of Hawai'i faculty and several individual faculty members) filed a complaint "seeking to prevent the implementation of the 'payroll lag act[,]'" which "would have resulted in a reduction in the University of Hawai'i's expenditures of approximately $6,163,000.00 in fiscal year 1998." 95 Hawai'i at 383 & n. 4, 23 P.3d at 718 & n. 4. The State defendants filed a motion for summary judgment and a motion to dismiss the complaint arguing, inter alia, that the plaintiffs "suffered no injury as a result of the conduct of which they complained." *Id.* at 386, 23 P.3d at 721. The

circuit court granted judgment in favor of the State on the merits. *Id.* at 388, 23 P.3d at 723.

On appeal, this court concluded that the plaintiffs lacked standing to assert their claims. *Id.* at 395, 23 P.3d at 730. In so doing, we noted:

> [T]he plaintiffs' allegation that the withholding of six million dollars from the University of Hawaii's appropriation resulted in "a loss of support for working conditions, teaching programs, research programs, discretionary support staff, replacement of consumable items, and ... electricity and telephone charges" *merely invites this court to infer that the plaintiffs, or at least some of them, were actually affected.* In fact, during oral argument, the plaintiffs' counsel conceded that the plaintiffs' claim to standing in the present matter depends on such an inference. *However, in the absence of evidence in the record establishing what "specific" and "personal" interest has been affected, the plaintiffs' argument amounts to speculation.*
>
> Moreover, even if the plaintiffs were to have alleged specific examples of changes in their work environment that had negatively impacted them, they would still have the burden of demonstrating that these changes were attributable to the defendants' actions. The loss of six million dollars could have been offset by the university through a tuition increase, a reduction in student services, a freeze of administrative-as opposed to teaching-staff salaries, or other savings without any discernible effect on the faculty members.
>
> *The plaintiffs do not attempt to prove any specific and personal injury but, rather, press their general proposition*

---

30. The court nevertheless concluded that Barrett did not have standing to pursue his claim because he had failed to name the United States as a party and his claim was accordingly not redressable. *Id.* at 944–45. The court explained:

> [Barrett's] injury, the inability to compete for Hawaiian homestead leases on an equal footing with native Hawaiians, requires a change in the qualification of the lease program. The native Hawaiian classification is both a state and a federal requirement. Consequently, *any*

> change in the qualification requires the participation of the State of Hawaii and the United States. Barrett's claim is not redressable because he failed to include the United States as a party to the action despite notice that its participation would be necessary.

*Id.* at 944 (citation omitted) (emphasis added); *see also Arakaki v. Lingle*, 477 F.3d 1048, 1061 (9th Cir.2007) ("[T]he United States remains an indispensable party to any challenge to the DHHL/HHC lease eligibility criteria.").

that, in any organization, a loss of six million dollars from its budget must have some negative effect on its operations, ultimately affecting all of its employees. Their argument calls for assumptions or inferences that are not supported by the record or any case law that the plaintiffs cite. Accordingly, the injury that the plaintiffs assert is "abstract, conjectural, or merely hypothetical." *Citizens for Protection of North Kohala Coastline [v. County of Hawai'i,* 91 Hawai'i 94, 100, 979 P.2d 1120, 1126 (1999) ], does not abrogate the "injury in fact" standing requirement in actions for declaratory relief affecting a public interest, but merely mandates less demanding standards in assessing the plaintiffs' proof of an "injury in fact." *Inasmuch as the plaintiffs have failed to demonstrate that they suffered an injury to a recognized interest, as opposed to "merely airing a political or intellectual grievance," we hold that the plaintiffs lacked standing to pursue the present action.*

*Id.* at 394–95, 23 P.3d at 729–30 (emphasis added) (citations omitted).

■ In the instant case, Taxpayers have failed to meet their burden of establishing that the standing requirements have been satisfied. *See Sierra Club v. Hawai'i Tourism Authority,* 100 Hawai'i 242, 250, 59 P.3d

877, 885 (2002) ("Petitioner must establish its standing for this court to exercise jurisdiction over this case."). In order to meet the first prong of the injury-in-fact test, i.e., that they had suffered an actual or threatened injury, Taxpayers were required to establish their interest in participating in the homestead lease program. However, as set forth *supra,* the record does not reflect that Taxpayers have applied for a homestead lease, and does not otherwise establish that Taxpayers are interested in participating in the homestead lease program. To the contrary, in their memorandum in opposition to the State's motion for summary judgment, Taxpayers asserted that "[n]one of the [Taxpayers] in these eight consolidated cases ask for award of a homestead lease." [31]

Accordingly, Taxpayers' allegations "merely invite[ ] this court to infer that the plaintiffs, or at least some of them, were actually affected." *See Mottl,* 95 Hawai'i at 394, 23 P.3d at 729. "[I]n the absence of evidence in the record establishing what 'specific' and 'personal' interest has been affected," Taxpayers' argument "amounts to speculation." *See id.* at 395, 23 P.3d at 730. Without more, Taxpayers are " 'merely airing a political or intellectual grievance[,]' " *see id.,* which the tax appeal court lacked jurisdiction to redress.[32]

---

**31.** In their Reply Brief to this court, Taxpayers respond that "[t]he State's assertion that [Taxpayers] do not 'want' a homestead lease is incorrect. [Taxpayers] have not *applied* for a homestead lease. To seek equal treatment in the taxation of their real property, [T]axpayers are not required to first make futile applications." (Emphasis in original) (citation and bold emphasis omitted). Even assuming *arguendo* that Taxpayers were not required to "make futile applications" for homestead leases in order to establish standing under the injury-in-fact test, nevertheless Taxpayers were required to establish their interest in participating in the homestead lease program in order to demonstrate that they had suffered an actual or threatened injury. Despite Taxpayers' assertions to the contrary in their Reply Brief, Taxpayers do not identify anywhere in the record where they have established they are interested in participating in the homestead lease program.

**32.** We decline to reach the issue, raised in the concurring opinion, of whether Taxpayers have general taxpayer standing to assert their claims. Although each of the individual plaintiffs allege

that they are taxpayers, they do not expressly claim general taxpayer standing. *See Mottl,* 95 Hawai'i at 391 n. 13, 23 P.3d at 726 n. 13. Accordingly, we need not address this theory. *Id.* (concluding that "the circuit court's exercise of jurisdiction over [plaintiffs'] complaint may not be justified on the ground that they were taxpayers[,]" where plaintiffs did not expressly claim general taxpayer standing or allege any pecuniary loss resulting from the actions of State officers in relation to the implementation of the payroll lag act); *see also Hawai'i Tourism Authority,* 100 Hawai'i at 250, 59 P.3d at 885 ("Petitioner must establish its standing for this court to exercise jurisdiction over this case."). Moreover, although Taxpayers' Opening Brief to this court asserts that the lack of an equivalent tax exemption costs non-homestead real property owners on Oahu an average of $1,717 per year, this assertion was not before the tax appeal court on the respective motions for summary judgment. HRS § 641–2 (2009) ("Every appeal shall be taken on the record and no new evidence shall be introduced in the supreme court."). To the contrary, the declarations and exhibits of-

Additionally, because the record does not establish that Taxpayers have an interest in becoming homestead lessees, it is not apparent that any change in the homestead lease qualification would affect Taxpayers' interests. Put another way, there is no indication in the record that Taxpayers would become homestead lessees if the native Hawaiian qualification were abolished.

Accordingly, Taxpayers have not asserted an injury-in-fact sufficient to confer standing to challenge the HHCA tax exemption, or the HHCA, generally.[33]

### B. This court need not address Taxpayers' remaining claims

#### 1. Taxpayers' claims of breach of trust and fiduciary duty

In their Opening Brief, Taxpayers assert that (1) "[t]he Newlands Resolution established the Ceded Lands Trust[;]" (2) the trust revenue is required to "be used solely for the benefit of the inhabitants of the Hawaiian Islands for educational and other purposes;" and (3) in adopting and implementing the HHCA, the State violates its fiduciary duties under the trust that Taxpayers allege was created by the Newlands Resolution.[34]

In response, the State asserts that Taxpayers' claims are not properly before this court and, alternatively, are without merit. The State further asserts that (1) "[t]here is serious question ... whether a true trust was 'created' by [the Newlands Resolution];" (2) assuming *arguendo* that a trust was created, that trust was subsequently modified by the settlor United States to mandate the

homesteader tax exemption; (3) even assuming the trust was not modified, there are "rational reasons to allow homesteader inhabitants, and not other inhabitants who are not homesteaders, the tax exemption;" (4) the Newlands Resolution called for Congress to "enact special laws" for public lands management and disposition, and the HHCA is such a law; and (5) non-homesteaders benefit from the remaining ceded lands not set aside for the HHCA homesteading program.

Taxpayers' argument on this point is not clearly articulated. Although Taxpayers provide some background concerning the Newlands Resolution, Taxpayers do not provide any specific argument as to how the adoption of the HHCA violated the trust that Taxpayers allege was created by the Newlands Resolution. Accordingly, this point of error may be deemed waived. *See* HRAP Rule 28(b)(7) ("Points not argued may be deemed waived."). Moreover, Taxpayers' claim before the tax appeal court concerned the equal protection clause, and their amended complaint cannot be fairly read to articulate any cause of action based on breach of fiduciary duty or trust law.

HRS § 232–16 provides that "[a]n appeal to the tax appeal court shall bring up for review all questions of fact and all questions of law, including constitutional questions, *necessary to the determination of the objections raised by the taxpayer or county in the notice of appeal.*" (Emphasis added). In the instant case, it does not appear that Taxpayers' breach of trust and fiduciary duty claims were necessary to the determination of their objections concerning the tax exemp-

---

fered in support of Taxpayers' Memorandum in Opposition to State's Motion for Summary Judgment and their Counter–Motion for Summary Judgment do not specify any pecuniary loss.

Because we conclude that Taxpayers do not have standing, we need not address the remaining issues raised in the concurring opinion, i.e., whether Taxpayers were required to join the United States as a party, and which level of scrutiny would apply to Taxpayers' claims.

33. Although the State asserts that Taxpayers have standing to challenge the tax exemption "in general—i.e., to challenge the fact that homesteaders receive the tax exemption, while non-homesteaders do not," we note that Taxpayers have not raised any such "general" challenge to

the tax exemption. To the contrary, Taxpayers challenge the tax exemption on only one ground: that only native Hawaiians are eligible to receive it.

34. In their Opening Brief, Taxpayers also appear to argue a new issue concerning the Contracts Clause of the United States Constitution. However, inasmuch as Taxpayers did not raise their Contracts Clause argument in the tax appeal court, that argument may be deemed waived. *See State v. Moses*, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases.") (citation omitted).

tion. Put another way, a determination that the State had breached its fiduciary duty by adopting the HHCA would have no bearing on the constitutionality of the tax exemption. Accordingly, although it does not appear that the tax appeal court adjudicated any breach of trust and fiduciary duty claims, it would have lacked jurisdiction to do so. *See* HRS § 232–16.

### 2. Taxpayers' equal footing doctrine claims

Taxpayers assert that (1) "a new state can only be admitted on equal footing with all others;" and (2) "Congress cannot condition a prospective new state's admission on its agreement to enter the Union on terms different than the original states did." Accordingly, Taxpayers argue, "a congressional admission act could not put a new state on an unequal footing by authorizing it to deny on account of race the right to receive public benefits." (Citation omitted). Taxpayers further argue that "Congress cannot authorize a State to violate the [e]qual [p]rotection [c]lause, nor can it immunize an unconstitutional program from judicial scrutiny."

In its Answering Brief, the State argues that Taxpayers' equal footing doctrine claim is not properly before this court and, in any event, Taxpayers "do not have the right to even assert the Equal Footing doctrine, as the right' asserted belongs to the States ..., not to Taxpayers." The State further argues that "[i]t surely cannot be a violation of the Equal Footing Doctrine for the United States to give Hawaii title to home lands *subject to certain conditions* when the United States did not have to give Hawaii title to those lands *at all.*" (Emphasis in original).

At the outset, it should be noted that Taxpayers' points of error allege that "the *United States* ... violated ... the Equal Footing Doctrine." (Emphasis added). Insofar as Taxpayers' equal footing doctrine claim appears to allege a claim against the United States, and Taxpayers have not named the United States as a party to this action, "[t]his court cannot undertake to hear and determine questions affecting the interests of these absent persons unless they are made

parties and have had an opportunity to come into court." *Filipino Fed'n of Am., Inc. v. Cubico,* 46 Haw. 353, 372, 380 P.2d 488, 498–99 (1963) (citation omitted); *cf. Kahala Royal Corp. v. Goodsill, Anderson, Quinn & Stifel,* 113 Hawai'i 251, 277, 151 P.3d 732, 758 (2007) ("Generally, '[i]t is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.'") (brackets in original) (citation omitted).

Moreover, as with their breach of trust and fiduciary duty claims, Taxpayers' amended complaint cannot be fairly read to articulate any cause of action based on the equal footing doctrine. In addition, it does not appear that Taxpayers' equal footing doctrine claim was necessary to the determination of their objections concerning the tax exemption. Thus, a determination that the State was admitted on unequal footing would have no bearing on the constitutionality of the tax exemption under the Fourteenth Amendment. Accordingly, although it does not appear that the tax appeal court adjudicated any equal footing doctrine claims, it would have lacked jurisdiction to do so. *See* HRS § 232–16.

### IV. CONCLUSION

We hold that Taxpayers lack standing to bring their equal protection challenges because they have not established that they are interested in participating in the homestead lease program. Accordingly, we vacate the tax appeal court's August 7, 2009 judgment and remand with instructions to dismiss Taxpayers' complaints for lack of jurisdiction.

Concurring Opinion by ACOBA, J.

I believe that Plaintiffs–Appellants John M. Corboy, Stephen Garo Aghjayan, Garry P. Smith, Earl F. Arakaki, and J. William Sanborn (Taxpayers), have standing as taxpayers to challenge the tax exemption set forth under the Hawaiian Homes Commission Act (HHCA) and adopted in article XII of the Hawai'i Constitution.[2] Accordingly, I

---

**2.** Section 4 of the Hawai'i Admission Act of 1969 (Admission Act), Pub.L. No. 86–3, 73 Stat. 4

disagree with the majority as to standing inasmuch as I would hold that Taxpayers have standing in this case.

However, because Section 4 of the Admission Act provides that the provisions of the HHCA are "subject to amendment or repeal only with the consent of the United States," the United States must be made a party to this action. Having failed to name the United States as a party to the instant action, Taxpayers cannot pursue their claims. For that reason, I join the result reached by the majority.

### I.

Taxpayers are all homeowners and real property taxpayers in various counties of the State of Hawai'i. They paid their real property taxes, as assessed by their respective counties, under protest, on the ground that the assessment of real property taxes against them violated their right to equal protection under the Fifth and Fourteenth Amendments to the United States Constitution and federal civil rights laws. Taxpayers filed their Amended Complaint for Refund of Real Property Taxes Paid Under Protest Pursuant to HRS § 40–35 and for Declaratory and Injunctive Relief (Amended Complaint) on January 22, 2008, raising the same claims.[3] Defendant–Appellee State of Hawai'i (the State) concedes that Taxpayers "have standing to challenge the tax exemption in general—i.e., to challenge the fact that homesteaders receive the tax exemption, while non-homesteaders do not." In view of the foregoing, Taxpayers' challenge in this case does not amount to a challenge to the qualifications for a Hawaiian homestead lessee under the HHCA, as the majority characterizes it, but rather, is a challenge to the tax exemption under the HHCA as adopted and extended by the counties.

(1959), *reprinted in* 1 Hawai'i Revised Statutes (HRS) 135 (2009 Repl.), which made Hawai'i a state of the union, required as a condition of admission, that Hawai'i adopt the HHCA "as a provision of [its] Constitution."

3. HRS § 40–35(a) (2009 Repl.) allows one to pay under protest "[a]ny disputed portion of moneys representing a claim in favor of the State[.]" "The protest [must] be in writing, signed by the

### II.

In *Iuli v. Fasi*, 62 Haw. 180, 184, 613 P.2d 653, 656 (1980), this court outlined "specific requirements which must be met before standing to taxpayers [may be] granted." It was explained that under *Munoz v. Ashford*, 40 Haw. 675 (1955), taxpayer standing requires: (1) the act complained of must be more than a "mere irregularity[,]" and "[i]n addition to an illegal act, the act must be such as to imperil the public interest or work public injury[,]" (2) the plaintiff must "allege loss in revenues resulting in an increase in plaintiff's tax burdens or to taxpayers in general[,]" and (3) "in the absence of a statute governing such suits, demand upon the proper public officer to take appropriate action is a condition precedent to maintenance of a taxpayer's action unless facts alleged sufficiently show that demand to bring suit would be useless." *Fasi*, 62 Haw. at 183–84, 613 P.2d at 656.

With respect to the first requirement under *Fasi*, Taxpayers argue that the assessment of property taxes against them is illegal because they are not afforded the same tax exemption as homestead lessees of Hawaiian ancestry, which Taxpayers maintain illegally discriminates against all non-Hawaiians on the basis of race. Taxpayers allege that the tax exemption "imperil[s] the public interest or work[s] public injury[,]" because "[r]acial distinctions are especially 'odious to a free people.'" (Quoting *Rice v. Cayetano*, 528 U.S. 495, 517, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000).)

*Rice* involved a challenge to the voting restriction for the nine trustees which made up the Office of Hawaiian Affairs, or OHA, which required voters to be Hawaiian. *Rice*, 528 U.S. at 499–500, 509, 120 S.Ct. 1044. According to *Rice*, "[t]he ancestral inquiry mandated by the State implicates the same

person making the payment, or by the person's agent, and shall set forth the grounds of protest." *Id.* "Any action to recover payment of taxes under protest shall be commenced in the tax appeal court" "within thirty days from the date of payment." HRS § 40–35(b). No one questions whether HRS § 40–35 allows one to pay his or her real property taxes under protest.

grave concerns as a classification specifying a particular race by name." *Id.* at 496, 120 S.Ct. 1044. Because, as discussed *infra*, the tax exemption is inextricably tied to an ancestral requirement, the illegal act alleged by Taxpayers, i.e., providing a tax exemption on the basis of ancestry, could "imperil the public interest or work public injury." *Fasi*, 62 Haw. at 183, 613 P.2d at 656.

With respect to the second requirement, Taxpayers allege a loss in revenues resulting in an increase in their tax burdens, or to taxpayers in general. For example, Taxpayers maintain that in the 2009–2010 year, the City and County of Honolulu projected that it would receive approximately $1,817 per residential parcel, with a total of 253,185 residential parcels on Oahu. However, according to Taxpayers, each of the 3,933 Hawaiian homestead parcels on Oahu were charged only $100 per year for their residential parcels. Thus, Taxpayers assert that the exemption afforded Hawaiian homestead lessees, but denied them, increased the amount of taxes they were required to pay. This would appear sufficient to "allege loss in revenues resulting in an increase in plaintiff's tax burdens or to taxpayers in general." *Id.* at 184, 613 P.2d at 656; *see also Murray v.*

*Comptroller of Treasury*, 241 Md. 383, 216 A.2d 897, 901–02 (1966) (holding that because the tax exemption resulted in "over $78 million dollars of real estate [being] exempted from taxation" and "the property owners who pay real estate taxes to the state ... would pay less taxes to the state if the exempted property were taxed[,]" plaintiffs showed a pecuniary loss and increase in their taxes sufficient to confer standing).

As previously discussed, Taxpayers filed their real property taxes under protest, asserting that the payment of their taxes deprived them of equal protection under the Fourteenth Amendment of the United States Constitution. Thus, a demand upon the proper public officer to take appropriate action was made in the instant case. Based on the foregoing, Taxpayers have established that they have standing to challenge the tax exemption under *Fasi.*[4]

### III.

The Supreme Court has held that plaintiffs who allege an injury that arises solely out of their status as federal taxpayers generally do not have standing under Article III of the United States Constitution.[5] *See Massachu-*

---

4. In *Hawaii's Thousand Friends v. Anderson*, 70 Haw. 276, 277, 768 P.2d 1293, 1295 (1989), this court set forth a somewhat similar test for taxpayer standing: "(1) plaintiff must be a taxpayer who contributes to the particular fund from which the illegal expenditures are allegedly made; and (2) plaintiff must suffer a pecuniary loss, which, in cases of fraud, are presumed." *Accord Mottl v. Miyahira*, 95 Hawai'i 381, 391, 23 P.3d 716, 726 (2001). *Anderson* involved a challenge to the expenditure of tax dollars. *See* 70 Haw. at 279–80, 768 P.2d at 1296–97. *Anderson* did not preclude the application of taxpayer standing to challenges to tax exemptions. An illegal tax exemption may amount to an illegal expenditure. *Cf. Freedom From Religion Found., Inc. v. Geithner*, 715 F.Supp.2d 1051, 1059 (E.D.Cal.2010) (rejecting the argument that "tax exemptions and deductions are not 'expenditures' " because "tax policies such as tax credits, exemptions, and deductions can have 'an economic effect comparable to that of aid given directly' to religious organizations" (quoting *Mueller v. Allen*, 463 U.S. 388, 399, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983))). With respect to the second requirement under *Anderson*, Taxpayers have alleged that they have suffered a pecuniary loss. As recounted, Taxpayers allege that the tax exemptions resulted in non-homestead homeowners paying an additional $1,717 in property

taxes for the 2009–2010 tax year, above the property taxes paid by Hawaiian homestead lessees.

5. "Article III of the [United States] Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.' " *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). "Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Supreme Court "ha[s] established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Id.* (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal quotation marks, brackets, ellipses and citations

*setts v. Mellon,* 262 U.S. 447, 487, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) (holding that taxpayers do not have standing to challenge federal expenditures because "interest in the moneys of the Treasury ... is shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain"); *see also DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342–44, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (stating that federal taxpayers do not have standing to challenge tax credits because (1) an injury "based on the asserted effect of [an] allegedly illegal [tax credit] on public revenues" is "not concrete and particularized, but instead a grievance the taxpayer suffers in some indefinite way in common with people generally[,]" (2) such injury is "not 'actual or imminent,' but instead 'conjectural or hypothetical'" because "it is unclear that tax breaks ... do in fact deplete the treasury[,]" and (3) "establishing redressability requires speculating that abolishing the challenged credit will redound to the benefit of the taxpayer because legislators will pass along the supposed increased revenue in the form of tax reductions" (quoting *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130)).

Preliminarily, it may be noted that, unlike a federal taxpayer's interest in the moneys of the federal treasury, a municipal taxpayer's interest is not "shared with millions of [people generally]." *Mellon,* 262 U.S. at 487, 43 S.Ct. 597. In any event, here, Taxpayers do not allege an injury that arises solely out of their status as municipal taxpayers. Taxpayers are not merely alleging that the exemption to Hawaiian homestead lessees depletes the amount of real property tax collected by the counties, thereby increasing their property taxes. Nor do they assert that by virtue of their contributions as real property taxpayers, they have an interest in the moneys collected by counties and, therefore, have standing to challenge the manner in which such moneys are used.

Rather, Taxpayers also allege that the denial of an exemption equal to that afforded Hawaiian homestead lessees denies them

equal protection under the law. Such injury would seem sufficient for purposes of standing. *See Hooper v. Bernalillo Cnty. Assessor,* 472 U.S. 612, 614, 624, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985) (reaching the merits of property owners' challenge to "a New Mexico statute that grant[ed] a tax exemption limited to those Vietnam veterans who resided in the State before May 8, 1976" on the ground that the exemption violated the Equal Protection Clause and the Fourteenth Amendment); *Califano v. Webster,* 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) (reaching the merits of a retired male wage earner's equal protection challenge to the Social Security Act which granted higher monthly old-age benefits to retired female wage earners); *Kahn v. Shevin,* 416 U.S. 351, 352, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) (reaching the merits of a widower's equal protection challenge to a Florida statute that provided for a property tax exemption for widows only).

IV.

Taxpayers' claim requires this court to determine whether the classification for the tax exemption is constitutional. That classification is set forth under the HHCA, the provisions of which have been adopted in article XII of the Hawaiʻi Constitution. Taxpayers' claim could be construed as a challenge to the tax exemptions under each of the Taxpayers' respective county codes as opposed to a challenge to the tax exemption under the HHCA. Taxpayers in fact state that "the injunction [sought in this case] is directed against the counties ... and would require the counties to refrain from directly or indirectly depriving any real property taxpayer of [an] exemption equivalent to that provided to Hawaiian homestead lessees." However, the counties grant a tax exemption to Hawaiian homestead lessees because they are mandated to do so under the Hawaiʻi Constitution. It is the HHCA that provides that the Hawaiian homestead "lessee[s] shall pay all taxes assessed upon the tract and improvements thereon[,]" "provided that an original lessee shall be exempt from all taxes for the first seven years after commencement of the

omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Id.* (internal quotation marks and citation omitted.)

term of the lease." HHCA §§ 208(7) & (8). Section 4 of the Hawai'i Admission Act, which made Hawai'i a state of the Union, required Hawai'i to adopt the HHCA "as a provision of [its] Constitution[.]"[6]

*Carroll v. Nakatani,* 342 F.3d 934 (9th Cir.2003) [hereinafter, *"Carroll II"*], affirming *Carroll v. Nakatani,* 188 F.Supp.2d 1219 (D.Haw.2001) [hereinafter, *"Carroll I"*], is instructive. There, the Ninth Circuit held that "[a]rticle XII of the Hawaiian Constitution cannot be declared unconstitutional without holding [Section 4] of the Admission[ ] Act unconstitutional." *Carroll II,* 342 F.3d at 944. As indicated previously, Section 4 of the Admission Act expressly provides that the provisions of the HHCA cannot be repealed or amended without the consent of the United States. Because the counties are required by the Hawai'i Constitution and federal legislation to grant real property tax exemptions to Hawaiian homestead lessees, any change in the classification for the exemption requires the participation of the United States. *See id.* (stating that because the "native Hawaiian classification is both a state and a federal requirement[,] ... any change in the qualification requires the participation of ... the United States").

Inasmuch as the United States is required to be a party to any lawsuit challenging the constitutionality of the HHCA, it must be made a party to this suit. *Cf. Arakaki v. Lingle,* 477 F.3d 1048, 1052 (9th Cir.2007) (stating that the "United States is an indispensable party to any lawsuit challenging the [Hawaiian homestead] leases," and the "failure to sue the United States [would mean] that [the] injury [would] not [be] redressable").[7] Because the United States was not named a party to this suit, the case should be remanded to the Tax Appeal Court for dismissal.[8] *Cf. Island Ins. Co., Ltd. v. Perry,* 94

---

**6.** Section 4 of the Admission Act provides in relevant part:

> As a compact with the United States relating to the management and disposition of the Hawaiian home lands, the *[HHCA], 1920, as amended, shall be adopted as a provision of the Constitution of said State,* as provided in section 7, subsection (b) of this Act, *subject to amendment or repeal only with the consent of the United States* [.]"

(Emphases added.)

**7.** Although Taxpayers note that the counties have "adopt[ed] and expan[ded] the HHCA's special exemption for Hawaiian homestead lessees," Taxpayers have made no discernible argument that could be construed as a specific challenge to the counties' expansion of the HHCA's tax exemption requirement. Hence, the argument is not addressed.

**8.** As indicated *supra,* the State argues that the tax exemption is subject to rational basis review because "the tax exemptions do not involve a potentially suspect racial classification, inasmuch as the tax exemptions are not based upon whether the taxpayer is native Hawaiian or not, but rather[,] whether the taxpayer is a lessee of the HHCA homesteads." Section 208 of the HHCA does provide that "an original lessee shall be exempt from all taxes for the first seven years after commencement of the term of the lease." However, the very same section of the HHCA provides that "[t]he original lessee shall be a native Hawaiian." *Id.* at § 208(1). It would appear that the qualification for the tax exemption is inextricably tied to ancestry. " 'Distinctions between citizens solely because of their ancestry ... [can] cause[ ] the same injuries, as laws or statutes that use race by name." *Rice,* 528 U.S. at 517, 120 S.Ct. 1044. Based on *Rice,* the classification here, akin to a race-based classification, would appear to be subject to strict scrutiny review. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 758, 127 S.Ct. 2738, 168 L.Ed.2d 508 (2007) ("[S]trict scrutiny applies to every racial classification[.]" (Citing *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995)).) "Under 'strict scrutiny' analysis, laws are presumed to be unconstitutional unless the state shows a compelling interest to justify such classifications, and the statute must be tailored to avoid unnecessary abridgements of constitutional rights." *State v. Guidry,* 105 Hawai'i 222, 239, 96 P.3d 242, 259 (2004).

The primary purpose of the HHCA is the rehabilitation of the Hawaiian people. *See Ahuna v. Dep't of Hawaiian Home Lands,* 64 Haw. 327, 336, 640 P.2d 1161, 1167 (1982) ("Senator John H. Wise, a member of the 'Legislative Commission of the Territory (of Hawaii),' and one of the authors of the HHCA, described the law as a plan for the rehabilitation of the Hawaiian people."); *see also In re Ainoa,* 60 Haw. 487, 488, 591 P.2d 607, 608 (1979) ("The purpose of the Act is to rehabilitate native Hawaiians on lands given the status of Hawaiian home lands under section 204 of the Act. Thus, native Hawaiians are special objects of solicitude under the Act."). In its Answering Brief, the State also noted that land leased to homestead lessees cannot be freely alienated by the lessee inasmuch as HHCA § 209 limits who may succeed to a homestead lease upon the lessee's death and any successor must be at lease one-quarter Hawaiian. The State

Hawai'i 498, 502, 17 P.3d 847, 851 (App.2000) ("remand[ing] for the entry of an order dismissing this case" because a necessary and indispensable party was not made a party to the action).

## V.

### A.

According to the majority, "Taxpayers' challenge to the tax exemption is, in essence, a challenge to the HHCA's native Hawaiian qualification for homestead lessees." Majority opinion at 709. The majority reasons that because the record does not establish that Taxpayers have applied for a lease or are interested in the homestead lease program, Taxpayers have failed to establish an injury-in-fact and, therefore, lack standing to pursue their challenge to the tax exemption. *Id.* at 696–97.

The majority attempts to characterize the instant case as one involving standing for purposes of a challenge to the Hawaiian homestead lease criteria. However, that is directly contrary to what Taxpayers claim they are challenging. The majority in fact notes that Taxpayers "assert[ ] that 'none of the Taxpayers ... ask for an award of a homestead lease.' " Majority opinion at 712 (brackets omitted). Contrary to the majority's characterization of the instant suit, Taxpayers specifically challenge the tax exemption.

additionally notes that nearly seventy percent of Hawaiian homestead lessees have "incomes below [eighty] percent of their county median[.]" In my view, there are compelling state interests justifying the classification. Additionally, the tax exemption is tailored to avoid unnecessary abridgements of constitutional rights because it limits the exemption to a specific period from the commencement of the term of the homestead lease.

9. While I believe taxpayer standing applies in this case, Taxpayers would also appear to have standing under the test set forth by the majority. In order to determine whether a plaintiff has established the requisite personal stake in the outcome of the litigation, this court asks the following questions: " '(1) has the plaintiff suffered an actual or threatened injury as a result of the defendant's wrongful conduct; (2) is the inju-

### B.

As indicated, the majority holds that Taxpayers lack standing in this case because they have failed to apply for or establish a desire to obtain a homestead lease. However, to reiterate, Taxpayers are not challenging the Hawaiian homestead lease qualifications, but the real property tax exemption provided for such lessees. Even assuming, *arguendo*, Taxpayers' challenge in this case could be construed as a challenge to the Hawaiian homestead lease qualifications, Taxpayers correctly assert that "[t]o seek equal treatment in taxation of their real property, [they] are not required to first make futile applications." It is abundantly apparent that it "would have been futile [for Taxpayers] to have made prior applications [for a lease] given the racial criteria, even if [they] indeed had a genuine and sincere desire for a homestead lease." *Carroll I,* 188 F.Supp.2d at 1230. Consequently, even under the majority's reasoning, Taxpayers would seem to have established "the requisite injury by not being able to compete on equal footing for a Hawaiian homestead lease." *Id.*[9]

### C.

The majority contends that it need not address taxpayer standing inasmuch as Taxpayers do not expressly claim general taxpayer standing. *See* majority opinion at 712–13 n.32. However, on appeal, the State argued only that Taxpayers "have no standing to [challenge the] *homestead qualification*

ry fairly traceable to the defendant's actions; and (3) would a favorable decision likely provide relief for plaintiff's injury.' " *Kaho'ohanohano v. State,* 114 Hawai'i 302, 318, 162 P.3d 696, 712 (2007) (quoting *Akinaka v. Disciplinary Bd. of the Hawai'i Supreme Court,* 91 Hawai'i 51, 55, 979 P.2d 1077, 1081 (1999)). As discussed *infra,* Taxpayers allege they have suffered a pecuniary loss based on their actual payment of real property taxes. Additionally, Taxpayers allege that the unconstitutional exemption results in an increase in the amount of taxes assessed against them. The foregoing injuries are fairly traceable to the alleged unconstitutional exemption. Finally, a favorable decision would likely provide Taxpayers relief by providing them with a refund. Moreover, the counties would be obliged to eliminate the exemption for Hawaiian homestead lessees or provide Taxpayers an equal exemption.

because they affirmatively deny wanting a homestead." (Emphasis added.) But, as stated, Taxpayers are not challenging the homestead qualification, but rather, the tax exemption under the HHCA. With respect to that challenge, the State emphasized that it was "*not* arguing that Taxpayers do not have standing to challenge the tax exemption in general—i.e. to challenge the fact that homesteaders receive the tax exemption, while non-homesteaders do not." (Emphasis in original.) Hence, Taxpayers did not expressly assert taxpayer standing inasmuch as it was never challenged in this case. In light of the agreement by the parties that Taxpayers have taxpayer standing to challenge the tax exemption, it is unclear why the majority has declined to address it.

### D.

The majority also asserts that this court may not take notice of Taxpayers' argument that the lack of an exemption equal to that afforded Hawaiian homestead lessees costs non-homestead real property owners an average of $1,717 per year, because this assertion was not made on the respective motions for summary judgment. *See* majority opinion at 712 n. 32. However, in Taxpayers' Memorandum in Opposition to State's Motion for Summary Judgment, Taxpayers argued that if they were afforded an exemption equal to that given to homestead lessees, each taxpayer would pay "no more than $100 per year." Thus, each taxpayer alleged that he paid an increased amount of taxes on account of the allegedly discriminatory tax exemption.

### VI.

For the foregoing reasons, I disagree with the standing analysis of the majority and would conclude taxpayer standing existed. However, because the instant case must be dismissed inasmuch as Taxpayers failed to include the United States as a party to this suit, I concur in the result.